We're on to the second case of the morning, call 208-787, speaking to the State of Illinois v. Robert J. Schag On behalf of the FBI, I'm Jack Hildebrand. On behalf of the FBI, I'm Larry W. Jacobs. May it please the court, my name is Jack Hildebrand and I'm representing the defendant in this case, Mr. Schag. I don't think I'm going to be able to get to all the issues in this because there's so many, so I'd like to start out with the two constitutional violations that occurred in this case. Two big flaws here. Two fundamental constitutional rights were violated. The right to be present and the right to the assistance of counsel. I'm sorry, the second one is the effective assistance of counsel? So there is error. It's a constitutional error, so we have to determine how significant those errors were. Well, they were significant. The judge told a deadlocked jury that it had to return originally. Maybe if you pull that mic a little closer, pull it up a little higher or something. Okay. They were significant because the judge told a deadlocked jury that it had to return a written jury verdict for both of those cases. First, that's wrong. And second, it's coercive. Based on the record that we have, I think a reasonable explanation of what could have happened because of that coercion would be that there were one or more jurors that felt that the state had not proved the case against the defendant. And then once they're told they have to do this, they go back into the jury room, or they were in the jury room already, but they jump ship because they have to sign a verdict. And because the majority of the jurors believed that the defendant was guilty, they went ahead and signed it because they thought they had to. And the jury, or the judge, left the jury in the dark about that second issue instruction of criminal sexual assault, the knowing consent. That left the jury with something, a rule to follow that can't be followed. It doesn't make any sense. That was the judge's job to make sure that the jury needed everything it needed to make a proper decision on a guilty or innocent defendant. Yes, and connected to this is that issue three that also deals with this same jury instruction. The jury couldn't presume that T.S. was not able to give consent the way it was written. So you're proposing the issue's instruction should have been broken down into three as opposed to two, I think is what you said? Yes. Is that what the I.P.I. shows? No. I don't believe the I.P.I. really contemplated this type of situation, perhaps. The I.P.I. didn't contemplate a knowing involuntary or knowing consent? When the defense is consent, what does knowing consent mean? Is there something like unknowing consent? No, but they're given a definition of consent. That's what ruined it. They're given that definition that applies to the mental state of a criminal defendant, not of a victim of a sex assault. Well, if that's really what happened, which probably did, that they presumed that she could not consent, then the issue would have boiled down to how long did the defendant know T.S. because that's how it would have to go. The jury would think, well, if the defendant had known T.S. before and if he was familiar with her, if he was friends with her, if he spent time with her, then he had to know that she could not consent. Well, didn't he give some descriptions of her to the police officer, I think his name was Janos, where he described her as slow-witted? He had several descriptions of her, did he not? I mean, wouldn't one be able to make a reasonable inference that he knew that she was not the, I think he, did he say the sharpest stick? He had some description of her. Yeah, that occurred. And no, the presumption that we can come back from watching that video, I mean, that's what this court is going to have to do because that's really where the evidence is about this issue. She protected herself. She did not say anything that would put her in jeopardy until she was absolutely certain and that the detective made her absolutely certain that he was not going to charge her. He told her, we're just one for men because they victimize you. And after that, she started opening up. She initially said, well, you know, the shags on camera are trying to get me into trouble. And the detective goes, for what? She says, I don't know. Of course she knows. But she was not going to give up anything. Because she knows. She knows. And she was the first one to bring up anything about the boy. She knows why she's there. She knows that what happened to that boy was a criminal offense. And she knew that she could get tagged for that. With a person with, what, a 70 IQ? 72. And that's in the normal range. But rather than talk about what she said or what the detective said, the video tells so much. Shows her demeanor. It shows how she spoke. How confident she was and all those things. I was surprised when I saw it. And she handled the police better than the defendant. So, I want to go back to this point because it's important. About the presuming that she could not consent. The jury then naturally would have said, well, if he knew her before, then he had to know. And therefore, he's guilty. And he's guilty because we're presuming that she could not give consent. So that's how, that's why he's guilty. We're presuming he, she could not give consent and he knew her. And your objection and one of your issues on appeal is that the court improperly allowed certain evidence in with respect to her IQ and with respect to her mental functioning. So, you're kind of using that, you're kind of going both ways. Saying, you know, they're presuming that she couldn't give consent. Well, certainly there was a lot of evidence in there with respect to her mental abilities or inabilities, correct? So, you have an objection to that coming in. So, if they're trying to prove that she had a mental inability without that coming in, how would they prove what you're talking about? The inability to consent. I mean, don't they need to bring that in? Sure, they do. But you objected to that and that's an objection and an issue that you brought up in this appeal, correct? Yes, I did raise that. I don't exactly remember what specific items that I objected to, but they weren't really relevant. Well, aren't they relevant, though, if the issue is consent, knowing consent? Wouldn't it be relevant? Well, the relevance would be what her IQ is and what she was able to do so that she could go to work and function normally in that way. But there were several people who testified as to her inability to function in a normal way. That's not relevant? Well, without giving any examples of why. I think that's unfair. I mean, the doctor, he should have at least something to say about it. He just can't make conclusory statements. And that the one doctor that did explain what he based his opinion on were things that apply to every human being at some point in their life, even adults. She wanted to be accepted. She wanted to be cool. She wanted to smoke, have sex, get tattoos. She wanted to be an adult and be accepted. When people do that, they have IQs that are perfectly normal. And they're perfectly intelligent people. So those types of objections are really aimed at things that were really outside of this, you know, how IRS had to go to the hospital and receive all this treatment and who's acting out and all those things. It just was unnecessary. So if the jury presumed that TS couldn't consent, then it would have found him guilty if he didn't know her. And if he didn't know her, then there wasn't enough evidence to put the defendant on notice that she couldn't consent if he was just meeting her there and didn't know anything about her. That's a reasonable conclusion that we can make. We shouldn't have to be guessing about this either. I mean, that's what the IPIs are for, so we don't guess at, well, what did the jury do? We tell the jury, this, this, this, sign this. And we shouldn't be arguing about, well, what did they think? You know, where did they go on this? Were they applying the right law? We don't know because they had one jury instruction that doesn't make sense. And that same jury instruction actually leaves room open for them to presume that she could not consent. Because these errors, these two constitutional errors that we just talked about, happened, and there's no dispute about that, we have to look to the significance of that. Of those errors. And the state provided those. The state provided arguments. It provided three arguments of why this was harmless. Their first argument is that the defendant did not object. Well, that's not going to work because you can't object to something that you don't know about. So that's not going to cut it. The second argument was that the language of the IPI followed the language used in the statute. But that's really no better because if we have a jury instruction that denies a defendant a fair trial, it doesn't matter what the statute says. It doesn't matter if it follows the statute. That's not what makes something, an instruction, good or bad. And the third argument was that we should not have the judge be required to presume that the jury was deadlocked indefinitely. Well, nobody's asked the judge to do that. I never thought about anything like that because the jury told them we're deadlocked, period. That's what he knew. That's what the judge knew. They were deadlocked, period, to infinity. What would your suggestion be? That he give them a quick time instruction? Yeah, he could have found out how serious the deadlock was, but he didn't. So based on the record, we have to take the jury's word for it. Let me go back real quick to that proposition instruction that you keep bringing up. It gives you two propositions. The first proposition is that the defendant committed an act of sexual penetration upon the victim. And then doesn't it say, and the defendant knew that the victim was unable to give knowing consent? So they have to find both propositions, do they not? So the second proposition, you're saying they're assuming facts that aren't in the evidence or they're assuming, putting an assumption on the jury. Isn't that a second proposition that they must find in addition to the first? No, not necessarily. It's like saying if the word was or, or if their hand isn't there, which says first that the defendant committed an act and second that the defendant knew that there was not knowing consent. But you put that and in there. Doesn't that separate it? Doesn't that cure what you're talking about? That the defendant knew that T.S. was unable to give knowing consent to the act. And the and that you're talking about is in the first? Between the first and the second. Okay. So they have to find both propositions are true. Well, yes. I mean, first they have to find that an actual offense had been committed. Correct. And then they have to address the defendant's defense, which was consent. Correct. And they skipped right over that. If the defendant knew that, if the defendant knew that she could not object. That the defendant knew. That the defendant knew. Yeah. So if they felt that the defendant didn't know, then they don't find the second proposition is true. So then he's found not guilty on that charge. Is that what the jury did? I don't, I would say, no, we can't count on that. It's like saying, okay, how many bottles of pop have you stole today? Well, it implies that you stole some pop and perhaps you did steal anything. That is how this is worded. Again, counsel, I understand your argument. You're saying that if the issue of the victim's ability to consent was not an issue, we would phrase the second executive the same way, right? If that was not an issue. This is exactly what we'd say, that the defendant knew she couldn't give consent. Even if her ability to consent was not an issue, it was a given, a stipulated to the fact that she could not consent. The instruction would be worded exactly the same way. That's your problem, right? No, then that would be okay. Because then we would know that the jury answered that question. Well, I mean, you say, if we had that, we'd phrase it the same way because it's not an issue. Here you're saying that you're reading the instruction is that it could be read to presume that she couldn't give consent. That's because there's no instruction in there that says that they first have to find whether or not she could give consent. That was my point. If that was no longer an issue, if it was a given issue. Then it's answered. If that is true, that she could not consent, then the second proposition would be okay. Well, no, it wouldn't be okay because now they still have to apply the definition of knowing. But if she was able to give knowing consent, we wouldn't even be there because she was of age and that would not be an issue, correct? There would be no crime if she were able to give consent. No. Well, that's for the jury to decide. How old was she? 27. And if you look at the video, you'll be surprised. I mean, she handled herself very well. And it's clear she knew what was up. She clearly knows what sex is. She really knows what the ramifications of having sex with a boy is. And it was her. So she was out of line for that. She knew that she would get prosecuted because she's already been prosecuted for cocaine possession. And I'm sure the parents of her who were at the guilty plea talked with defense counsel and told him about their daughter. And that's absolutely certain. And if the defense attorney knew about it, he told the state's attorney to try to get a better deal or for whatever. But that information had to flow through there. And if it did, it doesn't matter whether the judge would do anything or not. All right. You have time for rebuttal. Thank you. Good morning. Barry Jacobs on behalf of the people. May it please the court and counsel. I'm going to try and mirror or respond to what counsel raised this morning in this argument rather than just parodying my appellate brief back. Regarding, I believe, I know it's a part-time hearing as well. First point was regarding the jury note that was sent out by the jury with two questions. One, please explain knowing consent. And two, do we have to return, I'm paraphrasing, do we have to return a verdict on both counts? We're unable to do so so far. And so far is closed. Before you go on, who was present when the judge responded to those questions? Well, based on the record, it appears it's unclear that anyone was present other than the judge. And jumping ahead somewhat, I would, however, say, and I do argue in the brief about the standard of review, prior to the defendant filing his motion for judgment notwithstanding the verdict for a new trial, certainly that note was included in the jury instructions and was within the record in the clerk's office. Whether the standard of review is for plain error and the burden of persuasion on the defendant, this is, like I said, jumping ahead, or upon the people and necessary that we prove beyond a reasonable doubt that it was harmless, I don't think the effect is any different. The fact is there was no prejudice to this defendant based upon that jury note. In the first instance, the terms and the law supports this. The terms of the statute defining this offense include knowing consent. I'm getting all over the place here. The knowing consent terms, I argue in my appellate brief and I maintain, are clearly, are readily understood by their common meaning. There didn't need to be a specific instruction given or any clarification. And in that regard, the court had discretion to not answer that question about what knowing consent meant. What's your response to counsel's argument that the consent definition that was given was a consent definition with respect to a defendant's mental state versus a victim's mental state? I don't believe actually a consent definition was given. The knowing definition was, 501B was given. 501B was actually a necessary instruction because part of the charge of criminal sexual assault under this particular statutory section required that the defendant know that the victim, T.S., was unable to give knowing consent. So referring to the defendant's mental state, it was instructing on that, was completely improper because that was a question for the jury. I think, well, I don't think, I did argue in my brief, which was pointed out in the reply brief, that I, that knowing was confusing, that this was confusing to the jury. And listening this morning, I think it's inconsistent to say the jury did not consider whether or not T.S. did give knowing consent, and yet it sent a note asking, what is this? It's clear that the jury was wrestling with what is knowing consent? Did T.S. give knowing consent? The statute does not require specifically so that the three propositions be laid out as the non-IPI instruction that appellate counsel would have issued says. But it's clear, based upon their note, that they were actually considering that issue in the state's position. Thank you. If you don't mind, if you don't mind discussing and addressing with us some of those closing arguments. Yes. Not to be quib. It did seem that both the defense counsel and the prosecutor, in rebuttal, in responding to the defense counsel's far-reaching argument, did make colorful, very, very colorful comments about the defendant, about the police officer whose credibility was called into question, about T.S. the victim, which the defense counsel suggested had been lying, was like a starlet, had been bartering quid pro quo or something. The basic argument that I make is, if this Court believes that the comments were improper, and they were, as I said, very, very colorful, and it seemed both people thought they were clear and sterile, I don't know. They were very colorful. And my argument, without a specific question. Do you believe that they were prejudicial? That's what I was getting to. Based on the overwhelming evidence of guilt, I don't believe that even in the absence of the comments, the jury still could have reasonably concluded, beyond a reasonable doubt, that the defendant was guilty of both of these offenses. They were egregious, colorful comments. It's a people's condition that there was no prejudice shown, and that these were invited comments based upon the litany of comments made by defense counsel, opening with, we're here to render to Caesar things that are undue to Caesar, likening to Adolf Hitler. So I had the thought this morning, I don't know that defense counsel did any favors for his client by raising these, but to say that he suffered prejudice as a result, I think is a different matter in view of the overwhelming evidence that he was, in fact, guilty of both of these charges. Furthermore, the court did remediate the comments by giving the usual IPI 103, indicating that, of course, closing arguments are just that. They are not evidence that comments not based on there that should be disregarded. So the court did make an attempt to minimize any prejudice to the defendant. I have some additional questions about the jury question. Yes. How do you get past that there's a question that comes out from the jury to the judge, and the judge doesn't even notify the defendant at the time to give him an opportunity to respond to the question, suggest perhaps an additional instruction, whatever? I mean, that's clear ex parte communication. How do you get past that? As I said, the record does support that it was an ex parte, but then the question becomes. So the record does or does not support that? It does support that. Yeah, OK. So you're not arguing that. I'm not arguing that that was an ex parte communication. But the question, as I argue in my brief, is whether or not, based upon that, the defendant was able to show prejudice based upon that. It's my position, or the state's position, that there was no prejudice based upon the communication that was had. There was no substantive answer given by the judge regarding whether or not. But isn't he obligated to answer a specific question from the jury? He is obligated. However, there is law supporting the idea that the court would have the discretion where the instruction, defining a knowing consent, was clearly understandable based on its ordinary meaning. And that's your position? That's my position. OK. All right. In fact, I'll just jump back to the question of whether or not the defendant was proved guilty. I would note that the defendant, both in his brief and this morning, focuses only upon the IQ of T.S. There was a wealth of evidence presented from her doctors that gave specific examples of how she functioned, her low level of functioning, that she was easily influenced by peers. Her father talked about an incident where she had been misled by people at Juul. And it's notable that the defendant's knowledge can be tied to what his relatives who worked with this victim at Juul knew of her. If the family thought, this kind of struck me, if the family thought she had some issues as they set out, isn't it a little telling that they give her like a normal curfew, a midnight curfew? I'm sorry, her family? Gives her a normal curfew, a midnight curfew. And they said they recall one name when she came in at 1 a.m. So, I mean, on one hand they're saying she functions at a lower level, she's very easily influenced, she wants to be popular, she has a low IQ, but we're just going to let her go out until midnight. Is that a little bit contradictory? I couldn't speak to the family. The father did testify that she worked at Juul approximately 12 hours a week. She could not drive, she could not obtain a license, she couldn't make those kinds of decisions. Her doctor leader testified, her psychiatrist, that someone with her level of cognitive functioning in cases of dementia and being elderly might wind up in a nursing home. So I couldn't speak to what the family's rationale was for allowing her out. But they did set a curfew and she was, after all, 26 at the time. And based upon what the evidence showed from her doctors, she challenged the authority. She functioned more as a young teen or pre-teen and challenged authority. So I couldn't speak to why they would compromise and have a 12 p.m. curfew. Getting back to his point about this jury instruction that he'd like to see split up to make sure the jury knew that it had first defined the victim was unable to consent or understand, and then also prove that the defendant was aware of those facts, his point, as I understand it, is that if there was no issue about her ability to give consent, for example, if the issue was age as opposed to chronological age as opposed to competence, this would be worded the same way. If, in fact, the jury was not to decide whether she was capable of consenting, this is exactly how we would word this. We would say that the offender knew that the victim was underage. And here we have a phrase that the offender knew that the victim couldn't understand. And so his reading of it is that the jury could interpret that to mean that was a given, that she couldn't consent, but the issue was whether the defendant was aware of that. As it would be in some situations, the victim might be underage, the defense might be I didn't know that. So we wouldn't phrase it any differently if consent was something the jury was not to decide. Here, by phrasing it this way, the jury could conceivably think that they were not to decide. Well, I would disagree. It's mere inclusion within the statute. It's mere inclusion within this statute. I'm sorry, it's what kind of inclusion? Mere. The fact that it's actually in the statute, if that was not an issue. Oh, mere, like a looking glass mere, okay. But you used my favorite word, mere. Go ahead. M-E-R-E. No, it's M-I-R-O double R-O-R. I'm sorry. You're under looking glass. The fact that it's there, the fact that the language is even there. Not your mere. Indicates that. Well, there's no dispute that it mirrors the language of the statute, but that doesn't make it right. Right. Isn't it further compounded by the fact that that's exactly what the jury asks? That's the exact question they ask, is what does that mean? What does unable to give knowing consent to the act mean? I'm sorry, what is compounded? The question that Justice O'Malley asked you is, I think, further exemplified by the jury's question to the court, what does unable to give knowing consent to the act mean? I believe, as I said, the inclusion of that language indicates it's an element to be decided. That the jury did ask what the meaning was, and I submitted earlier in my brief, that that can be determined based upon the ordinary meaning of knowing and consent. Here's your explanation, but my question is that if this jury was grappling with whether the defendant knew it or whether she was able to give consent, distinguishing them into two separate questions, as counsel points out, isn't that further amplified by the fact that they specifically ask the court, help us define the first question, that this is, in fact, confusing? And it was, in fact, confusing to them because they took it upon themselves to ask the question about it. It may have been confusing, however, that does not mean that the jury was able to reach a verdict or didn't actually consider it as the defendant maintains. I did cite the Witten case, I believe it's the first district case, which talks about the defendant's state of mind being what is to be looked at here. It's necessary, of course, that the fact finder determine whether or not the victim, T.S., gave knowing consent, but the inquiry is whether or not the defendant knew that she was unable to give knowing consent. And that's what I cite the Witten case for. It does mirror the statute. The fact that they asked the question just indicates they did consider the issue and they were able to resolve it. Okay. Okay, counsel, thank you for your arguments. Mr. Jacobs and Mr. Hildebrand for rebuttals. Mr. Hildebrand, let me just hit you with a question right off the bat here. There was an awful lot of trial time, wasn't there, devoted to her competence? Doctors, psychologists, her family, her work situation, her curfew when she's a 26-year-old adult? An awful lot of time was devoted to that. What would the jury think that was all for if they weren't supposed to be using that to decide whether she's competent enough to consent? I thought you were meaning the pretrial testimony. Well, distinguish those two. What was said at the trial was what the state had to prove. They had to prove that she was not competent to do this and they had rights. Right, they had to prove that. So the jury, wasn't the jury listening to that testimony? What's the pretrial testimony you're talking about? One-fifth of a tentative. Okay, but at the trial, didn't the jury hear the testimony about her competence or not? Yes. Okay, what did the jury think that was for if they were going to presume that she was not competent? And why would they think they were hearing this testimony about that? Because a normal person could come to that conclusion. They're not lawyers. The issues and instructions they are required to follow, whether or not they heard a ton of evidence about something, they still have to apply law to those facts. If the court didn't feel that there was enough evidence to warrant that instruction, they would not give the instruction, correct? I mean, doesn't the state have to meet a certain burden in order to even have that instruction given? Based on the Witten case, isn't that instruction the instruction that needs to be given? Which would be the instruction about... If the offense is committed and you have to first, if the jury finds that, number one, the offense was committed and the defendant or the victim was unable to give knowing consent or the bracketed language. Well, it wouldn't be... It wouldn't have been given had that testimony not come in, correct? It wouldn't have been given. The first one wouldn't say whether there was a crime committed. It would have been just whether the sexual thing happened. And then, because it's not a crime yet. And then the second one, that's where we get into the real important instruction because that is where the jury is going to decide if that was a criminal act. And they have to find two things. They have to find that she couldn't give consent and that he knew it and they just shoved them together. And the instruction following the statute doesn't address the problem that we had with knowing, that knowing definition. The judge was asleep at the wheel. Defense counsel was asleep at the wheel. If there was going to be any changes in the instructions, which there should have been, nobody said a word about it. And they put in this knowing definition, which clearly, if you read it, you realize this shouldn't be going in. The consent one should be going in. Well, how about the Fisher case? Isn't that the one where the victim was passed out drunk? And the victim appeared to be passed out and the defendant says, well, I had sexual intercourse with her. I thought she was okay. So there was conflicting evidence whether the victim was unable to give consent or whether the defendant thought she was able to give consent. How is this any different? The jury's instruction in that case wasn't any different. Well, if she could give consent, she was awake. She couldn't give consent when she's not here on the planet. So I think that's totally different from what we have here. But isn't that a question for the finder of fact? Isn't that a question for the jury whether or not she had the ability to give consent? And they would make that determination based upon a reasonable inference of all of the testimony that has come in? Well, then I would ask for an instruction to tell the jury that a person who is unconscious can't give consent. And that would be a rule of law. Take it away from the jury. I mean, those are drastic cases compared to this one. Well, if the jury was under the mistaken impression that it did not have to decide whether the victim could give consent, why would they have sent out a question asking for a definition of that sort of thing? We don't know. That should have been. What? I mean, wouldn't it suggest that they were contemplating that? I mean, I know we don't know. I don't know. I say yes. I mean, I say that they could easily have just followed those instructions and not even thought about it. But they had to think about it or they wouldn't have asked that question. What was the question they sent out that the judge didn't handle properly? What was the question? They wanted to know what the meaning of the phrase unable to give consent. Okay. So if they didn't think they had to decide that question, why would they have asked the trial court for an explanation? Because they were not even getting to that question. They had a question beforehand. How do you apply knowingly to consent? And, you know, they had to apply that definition. All right, counsel. Thank you for your arguments for both of you. The matter will be taken on advisement. That decision will issue in due course.